## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DEBORAH STEEN,

    Plaintiff,

v.                                           Cause No. 2:24-cv-138

DS XPRESS INCORPORATED,
VLADIMIR SHAKHNAZARYAN,
RAINIER FRUIT COMPANY, and
SAGE FRUIT COMPANY, LLC,

    Defendants.

## PLAINTIFF'S COMPLAINT FOR NEGLIGENCE,
## PERSONAL INJURIES, PROPERTY AND PUNITIVE DAMAGES

Now comes Plaintiff Deborah Steen ("Plaintiff Steen"), through counsel Cervantes Scherr Legate, L.C., and asserts her Complaint against Defendants DS Xpress Incorporated ("Defendant Xpress"), Vladimir Shakhnazaryan ("Defendant Shakhnazaryan"), Rainier Fruit Company ("Defendant Rainier Fruit"), Sage Fruit Company, LLC ("Defendant Sage Fruit"), (hereinafter collectively "Defendants"). For her Complaint, Plaintiff Steen alleges the following:

### BACKGROUND AND JURISDICTION

1.    Plaintiff Deborah Steen asserts her right to recover damages as a result of the injuries she suffered after being struck in her vehicle by a tractor-trailer on August 26, 2021, in Quay County, New Mexico.

2.    On that date, Plaintiff Steen was operating her motor vehicle in a lawful manner, with the right-of-way and at a safe speed, when a commercial motor vehicle (as defined by the Federal Motor Carrier Safety Act and corresponding Federal Motor Carrier Safety Regulations) operated by Defendant Shakhnazaryan in the course and scope of his employment with the other named

Defendants, who served as his employers ("employee" and "employer" as defined by the Federal Motor Carrier Safety and corresponding Federal Motor Carrier Safety Regulations), failed to maintain his lane of traffic, improperly and unsafely changed lanes, and collided with Plaintiff Steen's vehicle.

3.      Plaintiff Steen is a resident of Otero County, New Mexico.

4.      Upon information and belief, Defendant Vladimir Shakhnazaryan is a resident of Fresno, California, and is subject to service of process at his home: 5692 N. Mariposa Street, Fresno, CA 93710-6125, or wherever he may be found, or as otherwise permitted by Rule 1-004(F) NMRA.

5.      Pursuant to 28 U.S.C. § 1332(a), this Court has personal and subject matter jurisdiction over Plaintiff Steen's Complaint against Defendant Shakhnazaryan, and pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

6.      Upon information and belief, Defendant DS Xpress Incorporated is a California corporation which is in the business of transporting goods across the United States, including within and across the State of New Mexico, as a for-hire interstate motor carrier operating under USDOT number 2143509.

7.      Upon information and belief, and at all times relevant to this Complaint, Defendant Xpress owned the 2020 Freightliner semi-truck (VIN: 3AKJHHDR7LSLR7033; License Plate No. XP67780), which was being operated by Defendant Shakhnazaryan on August 26, 2021, and which collided with Plaintiff Steen's vehicle in the State of New Mexico. Upon information and belief, this semi-truck was the medium selected and utilized by this transportation supply chain, whereby such semi-truck was hauling a "reefer" trailer loaded with Defendant Rainier Fruit and Defendant Sage Fruit's temperature-sensitive, perishable cargo, under the exclusive direction and control of Defendant Rainier Fruit and Defendant Sage Fruit, and which the delivery of such shipment would financially benefit each of the named Defendants.

8.      At all times relevant to this Complaint, Defendant Shakhnazaryan was an employee of Defendant Xpress, and was acting within the course and scope of such employment.

9.      Defendant Xpress is a foreign California corporation which derives substantial economic benefits from its business activities across the United States, including within and across the State of New Mexico, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

10.     Defendant DS Xpress Incorporated is subject to service of process upon its BOC-3 registered agent, Trucking Compliance & Permitting LLC, or any other corporate authorized officer or agent at: 4201 N. Prince Street, Clovis, NM 88101, or wherever they may be found, or as otherwise permitted by Rule 1-004(F) NMRA.

11.     Pursuant to 28 U.S.C. § 1332(a), this Court has personal and subject matter jurisdiction over Plaintiff Steen's Complaint against Defendant Xpress, and pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

12.     Upon information and belief, Defendant Rainier Fruit Company is a Washington corporation which is in the business of transporting goods across the United States, including within and across the State of New Mexico, as a private motor carrier operating under USDOT number 1116681.

13.     Upon information and belief, and at all times relevant to this Complaint, Defendant Rainier Fruit engages in the business of affecting interstate commerce by assigning commercial motor vehicles and employees to transport its temperature-sensitive, perishable cargo for compensation throughout the United States, including within and across the State of New Mexico, and meets the definition of an "employer" under the Federal Motor Carrier Safety Act and corresponding Federal Motor Carrier Safety Regulations.

14.     Upon information and belief, Defendant Rainier Fruit engaged in the business of interstate shipment of temperature-sensitive, perishable cargo in this transaction, by arranging this shipment from its facility in Selah, Washington, to Roanoke, Texas, by selecting Defendant Xpress to perform its duties as a motor carrier as its agent/employee within its transportation supply chain, with the objective of transporting its temperature-sensitive, perishable cargo within and across the State of New Mexico for compensation paid by Defendant Rainier Fruit.

15.     Defendant Rainier Fruit is a foreign Washington corporation which derives substantial economic benefits from its business activities across the United States, including within and across the State of New Mexico, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

16.     Defendant Rainier Fruit Company is subject to service of process upon its registered agent, William H. Zirkle, or any other corporate authorized officer or agent at: 352 Harrison Road, Selah, WA 98942, or wherever they may be found, or as otherwise permitted by Rule 1-004(F) NMRA.

17.     Pursuant to 28 U.S.C. § 1332(a), this Court has personal and subject matter jurisdiction over Plaintiff Steen's Complaint against Defendant Rainier Fruit, and pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

18.     Upon information and belief, Defendant Sage Fruit Company, LLC is a Washington limited liability company which is in the business of transporting goods across the United States, including within and across the State of New Mexico, as a private motor carrier operating under USDOT number 1919752.

19.     Upon information and belief, and at all times relevant to this Complaint, Defendant Sage Fruit engages in the business of affecting interstate commerce by assigning commercial motor vehicles and employees to transport its temperature-sensitive, perishable cargo for compensation

throughout the United States, including within and across the State of New Mexico, and meets the definition of an "employer" under the Federal Motor Carrier Safety Act and corresponding Federal Motor Carrier Safety Regulations.

20.    Upon information and belief, Defendant Sage Fruit engaged in the business of interstate shipment of temperature-sensitive, perishable cargo in this transaction, by arranging this shipment from its facility in Wapato, Washington, to Roanoke, Texas, by selecting Defendant Xpress to perform its duties as a motor carrier as its agent/employee within its transportation supply chain, with the objective of transporting its temperature-sensitive, perishable cargo within and across the State of New Mexico for compensation paid by Defendant Rainier Fruit.

21.    Defendant Sage Fruit is a foreign Washing limited liability company which derives substantial economic benefits from its business activities across the United States, including within and across the State of New Mexico, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

22.    Defendant Sage Fruit Company, LLC is subject to service of process upon its registered agent, Steve Clement, or any other corporate authorized officer or agent at: 191 Iron Horse Court, Yakima, WA 98901, or wherever they may be found, or as otherwise permitted by Rule 1-004(F) NMRA.

23.    Pursuant to 28 U.S.C. § 1332(a), this Court has personal and subject matter jurisdiction over Plaintiff Steen's Complaint against Defendant Sage Fruit, and pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

## FACTUAL ALLEGATIONS

24.     The injuries and damages which are the basis of this lawsuit occurred as the result of a tractor-trailer wreck on August 26, 2021, at approximately 11:15 a.m. on Interstate 40 near mile post 314 in Quay County, New Mexico.

25.     At the time of the tractor-trailer wreck which is the basis of this Complaint, this segment of Interstate 40 near mile post in Quay County, New Mexico, is a 4-lane highway with 2 eastbound traffic lanes and 2 westbound traffic lanes.

26.     At the time of the tractor-trailer wreck which is the basis of this Complaint, Plaintiff Steen was operating her 2018 Ford SUV traveling eastbound in the outermost lane of Interstate 40.

27.     At the time of the tractor-trailer wreck which is the basis of this Complaint, Plaintiff Steen was operating her vehicle in a lawful manner, was obeying all motor vehicle laws, and had the right-of-way.

28.     At the time of the tractor-trailer wreck which is the basis of this Complaint, Defendant Shakhnazaryan was operating a commercial motor vehicle and hauling a reefer trailer loaded with temperature-sensitive, perishable goods owned and shipped by Defendants Rainier Fruit and Sage Fruit, both private motor carriers. Upon information and belief, the truck driver and commercial motor vehicle were under the exclusive direction and control Defendant Rainier Fruit and Defendant Sage Fruit, both private motor carriers, because of the temperature-sensitive and perishable nature of the goods being transported. Accordingly, Defendant Shakhnazaryan was acting within the course and scope of his employment as an employee for a transportation supply chain consisting of Defendants Xpress, Rainier Fruit, and Sage Fruit, which such transportation supply chain was directly responsible for placing Defendant Shakhnazaryan on the public roadways of the State of New Mexico.

29.     At the time of the tractor-trailer wreck which is the basis of this Complaint, Defendant Shakhnazaryan was operating a commercial motor vehicle in violation of the hours-of-service laws of Federal Motor Carrier Safety Act and the corresponding regulations while on a "time is of the essence" mission organized, controlled and directed by the other named Defendants who required Defendant Shakhnazaryan to embark on an unsafe driving schedule in violation of 49 C.F.R. § 390.13. Defendants Rainier Fruit and Sage Fruit set the timeline for the unsafe driving schedule without consideration for any route and driving conditions which may be reasonably encountered during the mission.

30.     At the time of the tractor-trailer wreck which is the basis of this Complaint, Defendant Shakhnazaryan, who upon information and belief was not properly qualified to operate a commercial motor vehicle under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations, was unsafely operating this tractor-trailer combination traveling eastbound in the innermost lane of Interstate 40, and alongside Plaintiff Steen's vehicle, while impaired by driving excessive hours which affected his alertness.

31.     Suddenly and without warning, the tractor-trailer combination operated by Defendant Shakhnazaryan unlawfully and recklessly veered directly into Plaintiff Steen's lane of traffic and collided with Plaintiff's vehicle. This impact caused Plaintiff Steen to lose control of her vehicle and forced the vehicle into the dirt median of Interstate 40.

32.     Defendant Shakhnazaryan proximately caused this tractor-trailer wreck with Plaintiff Steen's vehicle by failing to maintain his lane of traffic, and unlawfully and recklessly veering into the outermost eastbound lane of Interstate 40 occupied by Plaintiff Steen's vehicle.

33.     As a result of the tractor-trailer wreck which is the subject of this Complaint, the New Mexico State Police issued Defendant Shakhnazaryan citation number 9061363, thereby citing Defendant Shakhnazaryan for his failure maintain the traffic lane in violation of §66-07-317 NMSA.

34.     On September 16, 2021, Defendant Shakhnazaryan pled guilty to citation number 9061363, and a violation of §66-07-317 NMSA.

35.     On September 24, 2021, a Judgment and Sentence was entered against Defendant Shakhnazaryan in Case No. M-40-TR-2021-01001, in the Tucumcari Magistrate Court.

36.     At all times relevant to the tractor-trailer wreck made the basis of this Complaint, Defendant Shakhnazaryan was an unfit and incompetent driver operating a commercial motor vehicle whose driver qualification file within the possession of Defendant Xpress lacked the following federally-mandated items: annual copy of his motor vehicle record for the previous year (49 C.F.R. § 391.25); note of annual review by the motor carrier (49 C.F.R. § 391.25); annual list of traffic violations or verification of no violations (49 C.F.R. § 391.27); non-expired Medical Examiner's certification (49 C.F.R. § 391.43); and post-accident alcohol and controlled substances test results (49 C.F.R. § 382.303).

37.     At all times relevant to the tractor-trailer wreck made the basis of this Complaint, Defendant Shakhnazaryan was an unfit and incompetent driver operating a commercial motor vehicle who unplugged or manipulated the electronic-logging device equipped to the tractor-trailer combination so he could drive in excess of the maximum allowable driving hours under the Federal Motor Carrier Safety Act and corresponding Federal Motor Carrier Safety Regulations. On August 25, 2021, at 7:50 a.m., Defendant Shakhnazaryan's driver logbook reflects he was on duty but not driving in Springville, Utah, with engine odometer at 238524 miles and engine hours at 9619.1. The next driver logbook entry notes that Defendant Shakhnazaryan was off duty in Bernalillo, New Mexico, on August 25, 2021, at 8:10 p.m. with engine odometer at 239013 miles and engine hours at 9630.8. Defendant Shakhnazaryan's driver logbook has approximately 11.7 hours of unaccounted for driving time over

the course of the day preceding this tractor-trailer wreck, which renders him in violation of the hours-of-service laws at the time of this tractor-trailer wreck.

38.    At all times relevant to the tractor-trailer wreck made the basis of this Complaint, Defendants were "motor carriers" as defined by, and subject to, all safety-related provisions of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

39.    At all times relevant to the tractor-trailer wreck made the basis of this Complaint, Defendant Xpress was a for-hire interstate motor carrier as defined by, and subject to the Federal Motor Carrier Safety and the corresponding Federal Motor Carrier Safety Regulations, and liable for the acts and omissions of its employee-driver. Defendant Xpress is the statutory employer of Defendant Shakhnazaryan, and thus, assumes full responsibility for his acts or omissions. Upon information and belief, at the time of hiring Defendant Shakhnazaryan and while supervising him at the time of this tractor-trailer wreck, Defendant Xpress was an unfit and incompetent motor carrier based on, but not limited to, 9 cancellations of federally-mandated insurance policies by its former insurers within the 5 years preceding this tractor-trailer wreck; 111 driver inspections with hours-of-service violations issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) from April through August of 2021; 39 driver inspections with unsafe driving violations issued by the Safety Management System from April through August of 2021; 10 driver inspections with driver fitness violations issued by the Safety Measurement System from April through August 2021; failing to report vehicular crashes resulting in fatalities or bodily injury to the Federal Motor Carrier Safety Administration (including for this tractor-trailer wreck); no safety rating issued by the Federal Motor Carrier Safety Administration at the time of this tractor-trailer wreck; lack of a sufficient fleet safety management program to continuously monitor and supervise employee-drivers operating commercial motor vehicles under its operating authority, and a lack of regulatory compliant

safety training and continued-safety education programs for its employee-drivers and mandatory record retention.

40.     At all times relevant to the tractor-trailer wreck made the basis of this Complaint, Defendants Rainier Fruit and Sage Fruit are the principal and licensed motor carriers, sophisticated, knowledgeable, and experienced with the responsibilities and duties imposed under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations. Specifically, Defendants Rainier Fruit and Sage Fruit know, or should know, the qualifications requirements for selecting motor carrier or truck drivers, and the hours-of-service laws. Yet, upon information and belief, Defendants Rainier Fruit and Sage Fruit jointly assigned their non-delegable duties under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations to Defendant Xpress, leaving Defendant Xpress to complete such integral, necessary safety tasks for compensation and for the benefit of Defendants Rainier Fruit and Sage Fruit. Defendants Rainier Fruit and Sage Fruit unsafely scheduled the mission, in violation of 49 C.F.R. § 390.13, with a "time is of the essence" pick-up and delivery requirement, which could not be reasonably be accomplished while driving in accordance with applicable driving laws, without violating the hours-of-service laws of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations. Because a successful, timely delivery is a prerequisite to Defendants Rainier Fruit and Sage Fruit receiving compensation from their customers, Defendants Rainier Fruit and Sage Fruit, upon information and belief, retained the right to control how Defendant Xpress completed its assigned mission including, but not limited to, directing the overall dynamic of the transportation supply chain; selection of the motor carrier and truck driver; dictating the pick-up and delivery time; dispatching the motor carrier and truck driver; requiring the use of temperature-controlled trailers; requiring the use of specified equipment; requiring that the motor carrier maintain specified amounts

of liability insurance; requiring that the motor carrier impose various restrictions and requirements on its truck drivers; and reserving the right to reduce compensation for shipment delays. As licensed motor carriers, Defendants Rainier Fruit and Sage Fruit knew, or should have known, that Defendant Shakhnazaryan and/or Defendant Xpress were unfit or incompetent as a truck driver or motor carrier, respectively, before dispatching them to transport Defendants Rainier Fruit and Sage Fruit's temperature-sensitive and perishable cargo on the public roadways of this State for compensation. The combined effect of Defendants Rainier Fruit and Sage Fruit's control over and involvement with the process of transporting the subject shipment proximately causing this tractor-trailer wreck, dictates that Defendants Rainier Fruit and Sage Fruit are vicariously liable for the acts and omissions of Defendants Xpress and Shakhnazaryan.

41.     Upon information and belief, Defendants Rainier Fruit and Sage Fruit demanded by Bill of Lading that "time is of the essence" from Defendants Xpress and Shakhnazaryan. The delivery timeline for this mission required, or could reasonably expect, Defendant Shakhnazaryan to exceed the hours-of-service laws under the Federal Motor Carrier Safety Act and corresponding Federal Motor Carrier Safety Regulations, to drive at unsafe speeds, to drive while fatigued, and to disregard other safety considerations in violation of 49 C.F.R. § 390.13, especially factoring in traffic, road conditions, inspections or other factors, such that the delivery timeline was unsafe and unreasonable.

42.     As a proximate result of Defendants Xpress, Rainier Fruit, and Sage Fruit's decision to place Defendant Shakhnazaryan, who was not properly qualified to be a fit and competent driver, behind the wheel of a commercial motor vehicle on the public roadways of the State of New Mexico, Plaintiff Steen suffered severe physical injuries including, but not limited to her neck, back, and other parts of her body.

43.     As a proximate result of Defendants' unreasonable and unsafe decision to place Defendant Shakhnazaryan, an unfit and incompetent driver, behind the wheel of a commercial motor vehicle on the public roadways of the State of New Mexico, Plaintiff Steen has and will continue to suffer recoverable damages including, but not limited to: (1) past and future medical expenses; (2) past and future physical and emotional pain and suffering and mental anguish; (3) past and future loss of household services; (4) past and future loss of enjoyment of life; (5) past and future impairment and disability; and (6) loss of vehicle and property damages.

## COUNT I: NEGLIGENCE AND NEGLIGENCE PER SE
## OF DEFENDANT VLADIMIR SHAKHNAZARYAN

44.     Plaintiff Steen hereby re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth in length.

45.     At all times relevant to the tractor-trailer wreck and injuries which are the basis of this Complaint, Defendant Shakhnazaryan owed the duty to exercise ordinary care to drive and control the commercial motor vehicle he was operating in a manner to ensure the safety of others traveling on the public roadways, including Plaintiff Steen.

46.     Upon information and belief, Defendant Shakhnazaryan breached his duty to exercise ordinary care for the safety of Plaintiff Steen in multiple ways, including without limitation:

   a.   Negligent failure to assure the adjacent lane of traffic was safe and open prior to attempting to change lanes of traffic;

   b.   Negligent failure to see Plaintiff Steen's vehicle to avoid the collision with Plaintiff Steen's vehicle;

   c.   Negligent failure to signal before attempting to change lanes of traffic;

   d.   Negligent failure to take evasive action to avoid the collision with Plaintiff Steen's vehicle;

    e.   Negligent failure to sound an audible alert or warning of impending danger to avoid the collision;

    f.   Violating the hours-of-service laws of Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

    g.   Driving while his ability or alertness is so impaired from fatigued or some other cause to make it unsafe in violation of 49 C.F.R. § 392.3;

    h.   Operating a commercial motor vehicle while he was disqualified to do so in violation of 49 C.F.R. § 391.15;

    i.   Negligent failure to possess, acquire, demonstrate and maintain the qualifications, knowledge, and skill necessary of a driver to safely operate a commercial motor vehicle as required under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

    j.   Negligent failure to possess, acquire, demonstrate and maintain the qualifications, training, testing and experience necessary of a driver to safely operate a commercial motor vehicle.

47.    Upon information and belief, Defendant Shakhnazaryan also breached certain statutory duties established by the motor vehicle laws of the State of New Mexico, including:

    a.   Failure to operate a motor vehicle to safely maintain a lane of traffic within a single lane and not to change lanes without first ascertaining the lane change can be made with safety, in violation of §66-07-317 NMSA;

    b.   Failure to maintain a safe distance while overtaking another motor vehicle in violation of §66-7-310 NMSA;

    c.   Failure to lawfully overtake and pass a vehicle proceeding in the same direction before safely clear of the overtaken vehicle in violation of §66-7-310 NMSA;

    d.   Failure to operate a motor vehicle  to avoid driving carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, and without due caution and circumspection, and at a speed or in a manner so as not to endanger or be likely to endanger any person or property in violation of §66-8-113(A) NMSA;

    e.   Failure to operate a motor vehicle giving full time and entire attention to operation of the motor vehicle in violation of §66-8-114(A) NMSA;

      f.   Failure to operate a motor vehicle so as not to drive in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances in violation of §66-8-114(B) NMSA.

48.     Defendant Shakhnazaryan breach prescribed statutory duties when he caused the wreck between the tractor-trailer he operated and Plaintiff Steen's vehicle.

49.     Defendant Shakhnazaryan's breach of prescribed statutory duties established by the motor vehicle laws of the State of New Mexico constitutes negligence *per se*.

50.     Defendant Shakhnazaryan's negligence, and negligence per se, proximately caused Plaintiff Steen to suffer severe physical injuries including to her neck, back, and other parts of her body.

51.     Defendant Shakhnazaryan's negligence, and negligence per se, also proximately caused irreparable damages to Plaintiff Steen's 2018 Ford SUV Vehicle, which was a total loss.

52.     As a proximate result of his negligence, Defendant Shakhnazaryan is liable to Plaintiff Steen in damages for: (1) past and future medical expenses; (2) past and future physical and emotional pain and suffering and mental anguish; (3) past and future loss of household services; (4) past and future loss of enjoyment of life; (5) past and future impairment and disability; and (6) loss of vehicle and property damages.

53.     Based on the acts or omissions which culminated in the tractor-trailer wreck which is the basis of this Complaint, Defendant Shakhnazaryan's unsafe operation of a commercial motor vehicle was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Steen requests judgment be entered on her behalf and against Defendant Shakhnazaryan for personal injuries, property damages and punitive damages all to be

determined by a jury, and to include also recoverable court costs, pre- and post- judgment interest and such other relief the Court deems just.

## COUNT II: NEGLIGENCE OF DEFENDANT
## DS XPRESS INCORPORATED

54.    Plaintiff Steen hereby re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth in length.

55.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Shakhnazaryan was employed by Defendant Xpress.

56.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Xpress was, and today remains, a licensed DOT motor carrier engaged in the business of transporting goods throughout the southwestern United States, including within and across the State of New Mexico.

57.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Xpress was a motor carrier as defined by, and subject to all requirements of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

58.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Xpress owed a duty of ordinary care to assure that its commercial motor vehicles were properly maintained, serviced and equipped to assure their safe operation on the public roadways, including within and across the State of New Mexico, and to assure the safety of the motoring public, including Plaintiff Steen.

59.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Xpress owed a duty of ordinary care to assure that the truck drivers employed to operate

commercial motor vehicles under its DOT operating authority were properly qualified, hired, trained, supervised and retained.

60.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Xpress was a statutory employer of Defendant Shakhnazaryan and Defendant Shakhnazaryan was acting within the course and scope of that employment.

61.    Defendant Xpress is vicariously liable for the negligence of Defendant Shakhnazaryan alleged herein, and by *respondeat superior*.

62.    Upon information and belief, Defendant Xpress breached its duty to exercise ordinary care for the safety of Plaintiff Steen in multiple ways, including without limitation:

    a.   Authorizing, permitting, or allowing its truck drivers to drive in excess of the hours-of-service laws in violation of 49 C.F.R. § 390.13.

    b.   Negligent failure to qualify, hire, train, supervise and educate its drivers, including Defendant Shakhnazaryan;

    c.   Negligent failure to qualify its drivers, including Defendant Shakhnazaryan, as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

    d.   Negligent failure to comply with the New Mexico Department of Transportation rules and regulations for qualifying and hiring commercial motor vehicle drivers, including Defendant Shakhnazaryan,

    e.   Negligent failure to comply with the New Mexico Department of Transportation rules and regulations for entrustment of vehicles to its commercial drivers, including Defendant Shakhnazaryan;

    f.   Negligent failure to properly evaluate, screen, qualify, hire and train applicants for its drivers, including Defendant Shakhnazaryan;

    g.   Negligent failure to adopt and enforce policies and procedures for qualifying drivers, including Defendant Shakhnazaryan, to operate its commercial motor vehicles;

h.  Negligent failure to adopt and enforce policies and procedures to assure its drivers, including Defendant Shakhnazaryan, remained continuously trained and qualified to operate commercial motor vehicles;

i.  Negligent failure to assure its drivers, including Defendant Shakhnazaryan, were properly supervised;

j.  Negligent failure to adopt and enforce policies and procedures to assure its drivers, including Defendant Shakhnazaryan, were adequately rested and alert when operating a commercial motor vehicle;

k.  Negligent failure to assure its semi tractor-trailers were equipped with safety devices, signals, and mirrors;

l.  Negligent failure to adopt and enforce policies and procedures to assure its drivers, including Defendant Shakhnazaryan, did not drive while distracted;

m.  Negligent failure to adapt and equip its commercial motor vehicles with available safety technology to assure its drivers, including Defendant Shakhnazaryan, did not drive while fatigued or distracted;

n.  Negligent failure to ensure its drivers, including Defendant Shakhnazaryan, possessed the requisite knowledge, experience, and skill to operate a commercial motor vehicle as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

o.  Negligent failure to ensure its drivers, including Defendant Shakhnazaryan, were trained on and knowledgeable of the Smith System's "Five Seeing Habits;"

p.  Negligent failure to ensure its drivers, including Defendant Shakhnazaryan, were trained on and knowledge of their state's Commercial Driver License Manual;

q.  Negligent failure to adopt or enforce policies and procedures to assure its drivers, including Defendant Shakhnazaryan, did not drive in excess of the maximum allowable driving hours under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

63.  Defendant Xpress' negligence proximately caused Plaintiff Steen to suffer personal injuries and property damages.

64.  Defendant Xpress' negligence proximately caused Plaintiff Steen to suffer severe physical injuries including to her neck, back, and other parts of her body.

65. Defendant Xpress' negligence, and negligence per se, also proximately caused irreparable damages to Plaintiff Steen's 2018 Ford SUV Vehicle, which was a total loss.

66. As a proximate result of its negligence, Defendant Xpress is liable to Plaintiff Steen in damages for: (1) past and future medical expenses; (2) past and future physical and emotional pain and suffering and mental anguish; (3) past and future loss of household services; (4) past and future loss of enjoyment of life; (5) past and future impairment and disability; and (6) loss of vehicle and property damages.

67. Based on the acts or omissions which culminated in the tractor-trailer wreck which is the basis of this Complaint, Defendant Xpress is an unfit and incompetent motor carrier whose decision to dispatch an unqualified, unfit and incompetent driver on the public roadways of this State was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Steen requests judgment be entered on her behalf and against Defendant Xpress for personal injuries, property damages and punitive damages all to be determined by a jury, and to include also recoverable court costs, pre- and post- judgment interest and such other relief the Court deems just.

## COUNT III: NEGLIGENCE OF DEFENDANT
## RAINIER FRUIT COMPANY

68. Plaintiff Steen hereby re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth in length.

69. At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Rainier Fruit was a sophisticated, knowledgeable, and DOT licensed motor carrier engaged in the business of transporting goods directly or by assigning shipments of its temperature-sensitive,

perishable cargo to motor carriers for transportation throughout the United States, including within and across the State of New Mexico.

70.     At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Rainier Fruit was not merely a "casual shipper" of goods, but rather a sophisticated, knowledgeable, experienced, and DOT licensed motor carrier, with its own transportation department, and the principal for whom Defendant Xpress performed, for compensation, integral and necessary functions within the transportation supply chain, ultimately for the financial benefit of Defendant Rainier Fruit.

71.     Because Defendant Rainier Fruit's business relies on the successful, timely delivery of its perishable goods by its selected motor carriers, Defendant Rainier Fruit, upon information and belief, retained control over and was actively involved in the transportation of the subject shipment by Defendant Xpress. Defendant Rainier Fruit's right of control dealt specifically with the integral details of transporting the subject shipment. Upon information and belief, Defendant Rainier Fruit: specified the role the motor carrier would fulfill; set the pick-up and delivery times for the subject shipment; dispatched the motor carrier's driver to pick-up the subject shipment; specified the type and functionality of the trailer required to transport the subject shipment; imposed the obligation of ensuring driver compliance with the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations on the motor carrier; imposed additional liability insurance requirements on the motor carrier; and reserved the right to reduce the motor carrier's compensation for untimely deliveries. Accordingly, Defendant Rainier Fruit meets the prescribed definition of an employer and motor carrier under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations. By extension, Defendant Rainier Fruit is a principal or statutory employer of Defendant Xpress and its driver, and is vicariously liable for the negligence of Defendant

Shakhnazaryan who was acing within the course and scope of that employment or agency on August 26, 2021.

72.    Defendant Rainier Fruit is vicariously liable for the negligence of its selected motor carrier and driver, arising within the course and scope of that employment or agency, which caused or contributed to the tractor-trailer wreck which is the basis for this Complaint, under the doctrines of *respondeat superior* and principal/agent.

73.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Rainier Fruit operated and controlled a transportation supply chain that fulfilled integral parts of its necessary business operations, whereby Defendant Rainier Fruit assigned drivers and equipment under its direction and control to transport its temperature-sensitive, perishable cargo. Upon information and belief, Defendant Rainier Fruit's role in the transportation supply chain, as principal and statutory employer of Defendants Xpress and Shakhnazaryan, dictates that it must comply with all requirements of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations applicable to an employer or motor carrier.

74.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Rainier Fruit failed to ensure that the commercial motor vehicle it assigned to transport its temperature-sensitive, perishable cargo was properly and safely maintained, serviced, equipped, inspected to assure the safety of the other motorists on the public roadways of this State, including Plaintiff Steen.

75.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Rainier Fruit owed a duty to exercise ordinary care to ensure that the selected motor carrier and driver it assigned to transport its temperature-sensitive, perishable cargo were qualified, fit and competent to assure the safety of other motorists on the public roadways, including Plaintiff Steen.

Defendant Rainier Fruit also owed a duty to exercise ordinary care to ensure that its selected motor carrier properly screened, qualified, trained, and supervised its drivers, such that only qualified, fit and competent drivers transported Defendant Rainier Fruit's temperature-sensitive, perishable cargo.

76.    Upon information and belief, Defendant Rainier Fruit breached its duty to exercise ordinary care in multiple ways, including without limitation:

   a.   Negligent scheduling of the subject shipment's delivery, making it an unsafe mission in violation of the applicable hours-of-service, speed, and other safety laws in violation of 49 C.F.R. § 390.13;

   b.   Negligent hiring/selection of an unfit and incompetent motor carrier, like Defendant Xpress, to transport the subject shipment in violation of the Restatement (Second) of Torts § 411;

   c.   Negligent supervision of a contracted motor carrier, like Defendant Xpress, within its transportation supply chain;

   d.   Authorizing, permitting, or allowing its truck drivers to drive in excess of the hours-of-service laws in violation of 49 C.F.R. § 390.13;

   e.   Negligent failure to supervise its drivers from driving in excess of the maximum allowable driving hours under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

   f.   Requiring or permitting its drivers to operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

   g.   Negligent failure to properly qualify, train, and supervise its contracted motor carrier and their drivers;

   h.   Negligent failure to verify that its contracted motor carrier, like Defendant Express, received a positive safety rating from the Federal Motor Carrier Safety Administration before tending the subject shipment;

   i.   Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, possessed the requisite knowledge, experience, and skill to transport the subject shipment;

j.  Negligent failure to establish and enforce formal policies and procedures for properly screening and qualifying its contracted motor carriers before tendering the subject shipment;

k.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, properly screened and qualified their drivers before tendering the subject shipment;

l.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, properly trained their drivers before tendering the subject shipment;

m.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, properly supervised their drivers before tendering the subject shipment;

n.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted motor carrier's drivers were adequately rested and alert, operating within the applicable hours-of-service laws; and practicing safe driving practices before tendering the subject shipment;

o.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted motor carrier's drivers did not operate a commercial motor vehicle while fatigued or distracted;

p.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted motor carrier equipped their commercial motor vehicles with available safety technology to assure their drivers did not driver while fatigued or distracted;

q.  Negligent failure to inquire into its contracted motor carrier's internal safety records and evaluations, safety training program, driver continued-training program, or fleet safety management program before tendering the subject shipment;

r.  Negligent failure to inquire into its contracted motor carrier's reputation within the trucking industry before tendering the subject shipment;

s.  Negligent failure to inquire into the 9 cancellations of Defendant Xpress' federally-mandated insurance policies before tendering the subject shipment;

t.  Negligent failure to inquire into the 111 hours-of-service violations issued to Defendant Xpress' drivers by the Safety Measurement System before tending the subject shipment;

u.  Negligent failure to inquire into the 39 unsafe driving violations issued to Defendant Xpress' drivers by the Safety Measurement System before tending the subject shipment;

v.  Negligent failure to inquire into the 10 driver fitness violations issued to Defendant Xpress' drivers by the Safety Measurement System before tending the subject shipment.

77.    Defendant Rainier Fruit's breach of its duty to exercise ordinary care by hiring, selecting and dispatching an unfit and incompetent motor carrier and/or driver on the public roadways of this State proximately caused the tractor-trailer wreck which is the basis of this Complaint that severely injured Plaintiff Steen and damaged her vehicle.

78.    As a proximate result of its negligence, Defendant Rainier Fruit is liable to Plaintiff Steen in damages for: (1) past and future medical expenses; (2) past and future physical and emotional pain and suffering and mental anguish; (3) past and future loss of household services; (4) past and future loss of enjoyment of life; (5) past and future impairment and disability; and (6) loss of vehicle and property damages.

79.    Based on the acts or omissions which culminated in the tractor-trailer wreck which is the basis of this Complaint, Defendant Rainier Fruit's decision to select and dispatch an unfit and incompetent motor carrier and/or driver on the public roadways of this State was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Steen requests judgment be entered on her behalf and against Defendant Rainier Fruit for personal injuries, property damages and punitive damages all to be determined by a jury, and to include also recoverable court costs, pre- and post- judgment interest and such other relief the Court deems just.

## COUNT IV: NEGLIGENCE OF DEFENDANT
## SAGE FRUIT COMPANY, LLC

80.     Plaintiff Steen hereby re-alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth in length.

81.     At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Sage Fruit was a sophisticated, knowledgeable, and DOT licensed motor carrier engaged in the business of transporting goods directly or by assigning shipments of its temperature-sensitive, perishable cargo to motor carriers for transportation throughout the United States, including within and across the State of New Mexico.

82.     At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Sage Fruit was not merely a "casual shipper" of goods, but rather a sophisticated, knowledgeable, experienced, and DOT licensed motor carrier, with its own transportation department, and the principal for whom Defendant Xpress performed, for compensation, integral and necessary functions within the transportation supply chain, ultimately for the financial benefit of Defendant Sage Fruit.

83.     Because Defendant Sage Fruit's business relies on the successful, timely delivery of its perishable goods by its selected motor carriers, Defendant Sage Fruit, upon information and belief, retained control over and was actively involved in the transportation of the subject shipment by Defendant Xpress. Defendant Sage Fruit's right of control dealt specifically with the integral details of transporting the subject shipment. Upon information and belief, Defendant Sage Fruit: specified the role the motor carrier would fulfill; set the pick-up and delivery times for the subject shipment; dispatched the motor carrier's driver to pick-up the subject shipment; specified the type and functionality of the trailer required to transport the subject shipment; imposed the obligation of

ensuring driver compliance with the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations on the motor carrier; imposed additional liability insurance requirements on the motor carrier; and reserved the right to reduce the motor carrier's compensation for untimely deliveries. Accordingly, Defendant Sage Fruit meets the prescribed definition of an employer and motor carrier under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations. By extension, Defendant Sage Fruit is a principal or statutory employer of Defendant Xpress and its driver, and is vicariously liable for the negligence of Defendant Shakhnazaryan who was acing within the course and scope of that employment or agency on August 26, 2021.

84.     Defendant Sage Fruit is vicariously liable for the negligence of its selected motor carrier and driver, arising within the course and scope of that employment or agency, which caused or contributed to the tractor-trailer wreck which is the basis for this Complaint, under the doctrines of *respondeat superior* and principal/agent.

85.     At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Sage Fruit operated and controlled a transportation supply chain that fulfilled integral parts of its necessary business operations, whereby Defendant Sage Fruit assigned drivers and equipment under its direction and control to transport its temperature-sensitive, perishable cargo. Upon information and belief, Defendant Sage Fruit's role in the transportation supply chain, as principal and statutory employer of Defendants Xpress and Shakhnazaryan, dictates that it must comply with all requirements of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations applicable to an employer or motor carrier.

86.     At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Sage Fruit failed to ensure that the commercial motor vehicle it assigned to transport its

temperature-sensitive, perishable cargo was properly and safely maintained, serviced, equipped, inspected to assure the safety of the other motorists on the public roadways of this State, including Plaintiff Steen.

87.    At all times relevant to the tractor-trailer wreck which is the basis of this Complaint, Defendant Sage Fruit owed a duty to exercise ordinary care to ensure that the selected motor carrier and driver it assigned to transport its temperature-sensitive, perishable cargo were qualified, fit and competent to assure the safety of other motorists on the public roadways, including Plaintiff Steen. Defendant Sage Fruit also owed a duty to exercise ordinary care to ensure that its selected motor carrier properly screened, qualified, trained, and supervised its drivers, such that only qualified, fit and competent drivers transported Defendant Sage Fruit's temperature-sensitive, perishable cargo.

88.    Upon information and belief, Defendant Sage Fruit breached its duty to exercise ordinary care in multiple ways, including without limitation:

   a.   Negligent scheduling of the subject shipment's delivery, making it an unsafe mission in violation of the applicable hours-of-service, speed, and other safety laws in violation of 49 C.F.R. § 390.13;

   b.   Negligent hiring/selection of an unfit and incompetent motor carrier, like Defendant Xpress, to transport the subject shipment in violation of the Restatement (Second) of Torts § 411;

   c.   Negligent supervision of a contracted motor carrier, like Defendant Xpress, within its transportation supply chain;

   d.   Authorizing, permitting, or allowing its truck drivers to drive in excess of the hours-of-service laws in violation of 49 C.F.R. § 390.13;

   e.   Negligent failure to supervise its drivers from driving in excess of the maximum allowable driving hours under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

   f.   Requiring or permitting its drivers to operate a commercial motor vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

g.  Negligent failure to properly qualify, train, and supervise its contracted motor carrier and their drivers;

h.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, received a positive safety rating from the Federal Motor Carrier Safety Administration before tending the subject shipment;

i.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, possessed the requisite knowledge, experience, and skill to transport the subject shipment;

j.  Negligent failure to establish and enforce formal policies and procedures for properly screening and qualifying its contracted motor carriers before tendering the subject shipment;

k.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, properly screened and qualified their drivers before tendering the subject shipment;

l.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, properly trained their drivers before tendering the subject shipment;

m.  Negligent failure to verify that its contracted motor carrier, like Defendant Xpress, properly supervised their drivers before tendering the subject shipment;

n.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted motor carrier's drivers were adequately rested and alert, operating within the applicable hours-of-service laws; and practicing safe driving practices before tendering the subject shipment;

o.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted motor carrier's drivers did not operate a commercial motor vehicle while fatigued or distracted;

p.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted motor carrier equipped their commercial motor vehicles with available safety technology to assure their drivers did not driver while fatigued or distracted;

q.  Negligent failure to inquire into its contracted motor carrier's internal safety records and evaluations, safety training program, driver continued-training program, or fleet safety management program before tendering the subject shipment;

r.  Negligent failure to inquire into its contracted motor carrier's reputation within the trucking industry before tendering the subject shipment;

s.  Negligent failure to inquire into the 9 cancellations of Defendant Xpress' federally-mandated insurance policies before tendering the subject shipment;

t.  Negligent failure to inquire into the 111 hours-of-service violations issued to Defendant Xpress' drivers by the Safety Measurement System before tending the subject shipment;

u.  Negligent failure to inquire into the 39 unsafe driving violations issued to Defendant Xpress' drivers by the Safety Measurement System before tending the subject shipment;

v.  Negligent failure to inquire into the 10 driver fitness violations issued to Defendant Xpress' drivers by the Safety Measurement System before tending the subject shipment.

89.    Defendant Sage Fruit's breach of its duty to exercise ordinary care by hiring, selecting and dispatching an unfit and incompetent motor carrier and/or driver on the public roadways of this State proximately caused the tractor-trailer wreck which is the basis of this Complaint that severely injured Plaintiff Steen and damaged her vehicle.

90.    As a proximate result of its negligence, Defendant Sage Fruit is liable to Plaintiff Steen in damages for: (1) past and future medical expenses; (2) past and future physical and emotional pain and suffering and mental anguish; (3) past and future loss of household services; (4) past and future loss of enjoyment of life; (5) past and future impairment and disability; and (6) loss of vehicle and property damages.

91.    Based on the acts or omissions which culminated in the tractor-trailer wreck which is the basis of this Complaint, Defendant Sage Fruit's decision to select and dispatch an unfit and incompetent motor carrier and/or driver on the public roadways of this State was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Steen requests judgment be entered on her behalf and against Defendant Sage Fruit for personal injuries, property damages and punitive damages all to be determined by a jury, and to include also recoverable court costs, pre- and post- judgment interest and such other relief the Court deems just.

### RECOVERABLE DAMAGES

92.     As a proximate result of Defendants' negligence, Plaintiff Steen is due a recovery for personal injuries and property damages including:

      a.   Past and future medical expenses;

      b.   Past and future physical and emotional pain and suffering and mental anguish;

      c.   Past and future loss of household services;

      d.   Past and future loss of enjoyment of life;

      e.   Past and future impairment and disability; and

      f.   Property damages for the total loss of Plaintiff Steen's 2018 Ford SUV Vehicle.

93.     Furthermore, the acts and omissions of Defendants were in reckless disregard for, and demonstrated an actual conscious indifference to Plaintiff Steen's rights and safety.

94.     Defendants' conduct constitutes willful, wanton, reckless and malicious conduct, for which Defendants are therefore subject to the imposition of punitive damages.

WHEREFORE, Plaintiff Steen should have a judgment entered jointly and severally against Defendants for her personal injuries, medical expenses, pain and suffering, emotional distress, loss of household services, impairment, disability, loss of enjoyment of life, property damages, and punitive damages, all to be determined by a jury, and additionally a judgment for recoverable court costs, pre- and post- judgment interest and such other relief the Court deems just.

## TWELVE-PERSON JURY DEMAND

95.     Plaintiff Steen also hereby respectfully requests a trial by a twelve-person jury for all

issues and damages. The required jury fee is tendered with the filing of this Complaint.

Respectfully submitted,

CERVANTES SCHERR LEGATE, LC

*/s/ Manuel E. Lopez III*
Manuel E. Lopez III
Joseph Cervantes
Attorneys for Plaintiff
901 E. University Ave., Suite 965 L
Las Cruces, New Mexico 88001
(575) 526-5600
joseph@csl.law
mlopez@scherrlegate.com